**Marcia JOHNSON, Plaintiff,**

v.

**McDONALD & COMPANY SECURITIES, INC.,**
**Defendant.**

No. 1:95–CV–2108.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 5, 1997.

Steven L. Howland, Hardiman, Buchanan & Howland, Cleveland, OH, for Plaintiff.

Donald F. Woodcock, Todd F. Palmer, Calfee, Halter & Griswold, Cleveland, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon the Motion for Summary Judgment (Document # 14) filed by Defendant McDonald & Company Securities, Inc. (hereinafter McDonald). For the reasons that follow, Defendant's Motion is GRANTED.

### Factual Background

In response to a classified advertisement, Plaintiff Marcia Johnson applied for the position of Payroll/Benefits Clerk at McDonald in July 1994. Although not hired for that position, Ms. Johnson's resume remained on file in the office of McDonald's Employment Manager, Sandy Opacich. Then, in August 1994, Ms. Opacich sent Ms. Johnson's resume and other resumes on file to Payroll Manager Mafia Smith who was seeking to hire a second Payroll Clerk.

The field of candidates was then narrowed to two individuals: Ms. Johnson, a black female, and Ms. Lynne Newson, a white female. Ms. Johnson went to McDonald for an interview and met with both Ms. Opacich and Ms. Smith. During her interview with Ms. Smith, Ms. Johnson understood that the job for which she was applying was that of Payroll Clerk, and she indicated that she had payroll experience as well as familiarity with Lotus 1–2–3, an accounting software program.

Ms. Opacich extended an offer of employment to Ms. Johnson through a letter dated September 13, 1994. Ms. Johnson began work as a Payroll Clerk in the Accounting Department on September 26, 1994, at an annual salary of $22,000. In accordance with McDonald's policy, the initial ninety days of her employment were considered a probationary period during which she could be terminated if she failed to perform her duties properly.

During the probationary period, Ms. Johnson's supervisors determined that she did not possess the payroll or Lotus skills to com-

plete her job to McDonald's satisfaction so they sent her to a Lotus training class. Nevertheless, her performance failed to improve. Therefore, rather than terminate her at the end of her ninety-day probationary period due to unsatisfactory work, on December 23, 1994, at Ms. Smith's request, Ms. Johnson's probationary period was extended for an additional ninety days, until March 23, 1995.

This extension notwithstanding, Ms. Smith received complaints regarding mistakes made by Ms. Johnson using the Lotus program and concluded that Ms. Johnson's performance during the extended probationary period did not improve. Therefore, Ms. Smith sent a memorandum to Ms. Opacich recommending that Ms. Johnson be terminated. Ms. Opacich approved the termination, effective March 23, 1995. Ms. Johnson was ultimately replaced by Ms. Chris Balas, a white, female who had been working as a temporary employee in the department.

### Procedural History

On October 2, 1995, Ms. Johnson filed a Complaint against Defendant McDonald alleging illegal discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e *et seq.* (hereinafter Title VII) and Chapter 4112 of the Ohio Revised Code. Ms. Johnson further alleged that McDonald engaged in a pattern and practice of discriminating against employees on the basis of their race.

On February 13, 1996, McDonald filed an Answer in which it denied any illegal discrimination based on sex or race. McDonald also filed a Counterclaim alleging the Plaintiff filed a frivolous lawsuit in violation of FED. R.CIV.P. 11 and Ohio Revised Code § 2323.51.

After receiving leave of Court, Ms. Johnson filed an Amended Complaint which merely withdrew the paragraph invoking jurisdiction under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* Then, on August 27, 1996, Ms. Johnson filed a Motion for Leave to File a Second Amended Complaint. Although opposed by McDonald, this Motion was granted and the Second Amended Complaint, changing the basis for the suit from sex discrimination to race discrimination, was filed on September 9, 1996.

McDonald filed a Motion for Summary Judgment on September 3, 1996. Although filed before Ms. Johnson filed her Second Amended Complaint, McDonald's Motion addresses the race discrimination alleged in the Second Amended Complaint. Ms. Johnson filed a Brief in Opposition on October 18, 1996, and McDonald filed a reply memorandum on November 8, 1996.

### Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 478 (6 th Cir.1995) (quoting *Anderson*, at 248–49, 106 S.Ct. at 2510–11, 91 L.Ed.2d 202 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.*, 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). FED.R.CIV.P. 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial—

whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### Discussion

■ In order to establish a case of race discrimination under Title VII a plaintiff must present either direct evidence of intentional discrimination on the part of the Defendant or show the existence of circumstantial evidence which creates an inference of discrimination.[1] *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995).

■ When a plaintiff has no direct evidence of discrimination, she may create an inference of discrimination through the use of circumstantial evidence under the now familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. Under that framework, a plaintiff in a Title VII action must first establish a prima facie case of racial discrimination by demonstrating that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment decision; and, 4) was replaced by a person outside the protected class. *Id.; See also, Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994); *Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir.1992); *Shah v. General Electric Co.,* 816 F.2d 264, 268 (6th Cir.1987).

A plaintiff who establishes a prima facie case creates a presumption that the employer unlawfully discriminated against her. The burden, then, shifts to the defendant to rebut the presumption of discrimination by producing a legitimate, nondiscriminatory reason for its decision. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

If the prima facie case is so rebutted by the defendant, the plaintiff then has the burden to prove that the proffered reasons were not the true reasons, but in fact, constituted a pretext for intentional discrimination on the basis of race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In this case is undisputed that Ms. Johnson is a member of a protected class, suffered an adverse employment action, and was replaced by a person outside the protected class. Thus, the only part of the *McDonnell Douglas* test in contention is whether or not Ms. Johnson was qualified for the position of Payroll Clerk. To prove that she was qualified for the job of Payroll Clerk, Ms. Johnson must prove that she was performing the job "at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990)(*citing Huhn v. Koehring,* 718 F.2d 239, 243 (7th Cir.1983)). Thus, "if [she] was not doing what h[er] employer wanted h[er] to do, [s]he was not doing h[er] job ... [and she] does not raise a material issue of fact on the question of the quality of h[er] work merely by challenging the judgment of h[er] superiors." *McDonald,* 898 F.2d at 1160 (*citing Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)).

In its Motion for Summary Judgment, McDonald argues that Ms. Johnson was not qualified for the position. In support of this contention, McDonald offered, *inter alia,* the affidavits of both Ms. Opacich and Ms. Smith, as well as the deposition testimony of the Plaintiff. This evidence demonstrates that Ms. Johnson told Ms. Smith during her interview that she had experience with Lo-

---

1. The Ohio Supreme Court has determined that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Ohio Civ. Rights Comm. v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994) (citing *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)). Accordingly, analysis of the Title VII claim and Ohio Revised Code claim will be considered together.

tus spreadsheets and that she had prepared payroll checks and figured payroll taxes. Similarly, in her application, Ms. Johnson indicated that she had four years of Lotus experience as well as skills in accounting. The evidence further demonstrates that in contrast to Ms. Johnson's representations at her interview and in her application, she failed to produce needed audits and reports and was deficient in performing basic Lotus commands. Furthermore, Ms. Johnson stopped performing vital payroll tasks without authorization, and she admitted in her deposition testimony that she had never calculated payroll taxes nor calculated deductions from gross pay before her employment at McDonald. This admission was in direct contravention of the statements she made in her interview and inconsistent with the statement she made in her application that she possessed accounting skills.

In response to McDonald's Motion for Summary Judgment, Ms. Johnson only submitted her resume and her own affidavit in which she denied both that she was not proficient at Lotus 1–2–3 or that she ever stopped performing any payroll functions that were not specifically taken from her. She further averred in her affidavit that she was not given a chance to improve during the probationary period and that her job duties were systematically taken away from her until she simply sat at her desk with nothing to do.

■ Although the averments in Ms. Johnson's affidavit which are based on personal knowledge may be used in support of her opposition to McDonald's Motion, much of her affidavit consists of self-serving and conclusory statements that she performed her tasks adequately or even well. However, the Supreme Court and the Sixth Circuit have made clear that bald, self-serving conclusory allegations are insufficient to withstand a motion for summary judgment. *Evans v. Jay Instrument*, 889 F.Supp. 302 (S.D.Ohio 1995) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d 202 (1986)). *See*

*also, Bryant v. Kentucky*, 490 F.2d 1273 (6th Cir.1974) (stating that conclusory allegations, without more, are not enough to survive summary judgment).

In this case, there is evidence to demonstrate that Ms. Johnson did not meet her employer's expectations: she failed to perform vital payroll tasks; she needed remedial training in Lotus applications; and, she did not have payroll experience although she had so indicated during the interview process. Ms. Johnson, who offered only her own affidavit and resume, has failed to present any competent or credible evidence to the contrary and, therefore, has failed to demonstrate that she was qualified for the position. Accordingly, Ms. Johnson cannot establish a prima facie case of race discrimination and McDonald is entitled to judgment as a matter of law.

■ The conclusion that McDonald is entitled to judgment as a matter of law is further supported by the fact that the Sixth Circuit has adopted the "same actor" inference, whereby a presumption of non-discrimination may be drawn when the same individual is responsible for both hiring and firing the plaintiff. *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461 (6th Cir.1995). Thus, "in cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Id.* at 464 (*citing Proud v. Stone*, 945 F.2d 796, 797–798 (4th Cir.1991)). In the instant case, Ms. Johnson was both hired and fired by Sandy Opacich within a six month period.[2] Furthermore, Ms. Opacich originally hired Ms. Johnson over a white applicant.

■ Finally, even if Ms. Johnson demonstrated a prima facie case and McDonald was not entitled to the same actor inference, McDonald would still be entitled to judgment as

---

**2.** Ms. Johnson argues this inference should not apply because although Ms. Opacich officially hired and fired her, she was fired because of the animus of her immediate supervisor Ms. Smith. Even if true, this allegation would not prevent the application of the inference because Ms Smith, who both recommended the additional period of probation and ultimately the termination, also participated in the interview of Ms. Johnson and the decision to hire her.

a matter of law. McDonald offered a legitimate and non-discriminatory reason for firing Ms. Johnson by stating it terminated her because she lacked Lotus and payroll skills, and Ms. Johnson has failed to present any evidence that this reason constitutes a pretext for discrimination. *St. Mary's Honor Center*, 509 U.S. 502, 113 S.Ct. 2742.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED WITH PREJUDICE. All costs to the Plaintiff.

Defendant's claim for sanctions pursuant to FED.R.CIV.P. 11, if not satisfied by the assessment of costs in this action, may be submitted in a Post–Judgment Motion.