Mary E. BUHRMASTER,
Plaintiff–Appellant,

v.

OVERNITE TRANSPORTATION
COMPANY, Defendant–
Appellee.

No. 94–3517.

United States Court of Appeals,
Sixth Circuit.

Argued June 16, 1995.

Decided Aug. 2, 1995.

Mary K. C. Soter (argued and briefed), Dayton, OH, for plaintiff-appellant.

Adele E. O'Conner, Porter, Wright, Morris & Author, Columbus, OH, Joseph D. Smallwood, Porter, Wright, Morris & Arthur, Dayton, OH, Jay L. Grytdahl (briefed), Blakeney, Alexander & Machen, Charlotte, NC, W. T. Cranfill, Jr. (argued), Blakeney & Alexander, Charlotte, NC, for defendant-appellee.

Before: MERRITT, Chief Judge; BROWN and MARTIN, Circuit Judges.

BAILEY BROWN, Circuit Judge.

Plaintiff Mary E. Buhrmaster claims that defendant Overnite Transportation Company violated Title VII by firing her because of her sex. 42 U.S.C. § 2000e. Her case went to trial, and the jury found for the defendant. Claiming several errors by the district court, the plaintiff brought the instant appeal.

## I.

Mary Buhrmaster was initially hired in 1984 by Charles Littleton, the Manager of Overnite's Dayton Terminal. For the next seven and a half years, she had a relatively successful career there. She became a Customer Service Representative, and in May of 1989, she was promoted to Office Manager—the only woman with a supervisory position in the office.

As Office Manager, Buhrmaster admitted she served as Littleton's "right hand man." She also served as a dispatcher when necessary and performed myriad administrative functions. Finally, she admitted she was second in command at the Overnite Dayton Terminal in that all "supervisory" personnel reported to her. J.A. at 303. Throughout her employment, Buhrmaster was never written up for any workplace violations, and Littleton repeatedly complimented her competency and willingness to work hard.

The evidence presented at trial, however, showed that despite these laudations, Buhrmaster was not the perfect employee. Although married, she carried on a close personal relationship with Mike Southward, a subordinate who drove trucks for the Company. They would often eat breakfast and lunch in her office, and he regularly gave her flowers and gifts. Several employees complained to Buhrmaster and Littleton about this relationship, finding it offensive. Littleton counseled Buhrmaster to be more discreet, and Southward and Buhrmaster decided to suppress the relationship at work.

In addition, there was apparently widespread discontent among Overnite's employees concerning Buhrmaster's management style. The employees complained to Littleton about these problems several times both individually and en masse, but nothing was done. The employees then complained to the home office in Richmond, Virginia, precipitating a visit from Ray Laughrum, an executive with the Company. After meeting with various employees, Laughrum advised Littleton, and, according to Overnite, Littleton decided to fire Buhrmaster.[1] Buhrmaster received the following reasons for her termination:

> The fact that she had been unable to maintain the morale and provide the leadership to the office personnel, the fact that if she had been able to provide the leadership to the personnel, they wouldn't have been coming to me individually and en masse to complain about the way they felt about her as an office manager, and that the feelings were so strong that the office staff was in near revolt at the time and the only way to get the terminal operation at the administrative end of it back on an even keel was to remove her from the position as office manager.

J.A. at 229. Littleton replaced Buhrmaster with another woman.

---

1. According to Buhrmaster, the home office *forced* Littleton to fire Buhrmaster.

Because there was no direct evidence of discrimination, Buhrmaster attempted to prove her case circumstantially by claiming that she had been treated differently from similarly situated men who had engaged in similar conduct. At trial, she produced evidence showing that a number of supervisors had also engaged in some form of misconduct and had *not* been fired. After deliberating for ten hours, the jury found for the defendant, and the plaintiff appealed.

## II.

The most significant issue raised in this appeal is whether the district court was correct in giving the jury an instruction on the "same actor" inference, which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee. This instruction was based on the evidence that Littleton both hired and fired Buhrmaster. Thus far, two circuits have used the same actor inference in upholding the dismissal of an age discrimination claim. *Proud v. Stone,* 945 F.2d 796 (4th Cir.1991); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173 (8th Cir.1992). No circuit has used the inference in the context of sex discrimination, and no circuit has approved any jury instructions on the same actor inference.

The Fourth Circuit's opinion in *Proud v. Stone* best explains the rationale for the same actor inference. The court reasoned that in cases where the same person both hired and fired the employee:

> One is quickly drawn to the realization that "[c]laims that employer animus exists in termination but not in hiring seem irrational." From the standpoint of the putative discriminator, "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."

*Proud,* 945 F.2d at 797. Thus, the court created the following rule: "in cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor

for the adverse action taken by the employer." *Id.; J.B. Hunt,* 963 F.2d at 175 ("It is simply incredible ... that the company officials who hired [an employee] at age fifty-one had suddenly developed an aversion to older people two years later.").

In the present case, the district court decided that the same actor inference used by the courts in *Proud* and *J.B. Hunt* could be applied in sex discrimination cases. It therefore gave the jury the following instruction:

> You have heard that Mr. Chuck Littleton, the person who hired Ms. Buhrmaster, was also the person who discharged her. In addition, during her period of employment at Overnite's Dayton terminal, Mr. Littleton promoted Ms. Buhrmaster on more than one occasion, including making her the first female office manager for the Dayton terminal. He also approved periodic pay raises for her. Mr. Littleton also hired another woman, Marcia Walters, as office manager after he discharged Ms. Buhrmaster.
>
> When the individual who hires a person is the same person who fires an employee, there is a strong inference that discrimination did not motivate the employment decision. You may, but are not required to, infer from this evidence that Mr. Littleton's decision to terminate Ms. Buhrmaster's employment was not motivated by sex.
>
> Plaintiff contends that Ms. Buhrmaster was in effect fired by the home office, and not by Mr. Littleton. The question of who fired Ms. Buhrmaster is a question of fact for you, the jury, to decide.

*Plaintiff's Brief* at 32; *J.A.* at 403. The plaintiff objects to this instruction on a number of grounds.

■ First, she argues that there was insufficient evidence to show that Littleton made the ultimate discharge decision, and the instruction therefore should not have been given at all. Our recent decision in *United States v. Mari,* 47 F.3d 782 (6th Cir.1995), rejected this very argument. In that case, we held that when a jury charge accurately states the law but is not supported by the facts, any error in giving the instruc-

tion is harmless as a matter of law. The jury will conclude for itself that there is insufficient evidence to support an application of the instruction, and thus reject it as "mere surplusage." *Id.* at 786.

The plaintiff next argues that the same actor inference should be limited to age discrimination cases. We disagree. An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This *general principle applies* regardless of whether the class is age, race, sex, or some other protected classification.

Finally, the plaintiff argues that the district court's instruction misstated the law. She argues that *Proud* and *J.B. Hunt* require a short period of time between the hiring or promotion and the firing in order to justify the inference.

We agree with the plaintiff that the length of time between the hiring and firing of an employee affects the strength of the inference that discrimination was not a factor in the employee's discharge. Over the years, an individual may develop an animus towards a class of people that did not exist when the hiring decision was made.[2] However, to say that time weakens the same actor inference is not to say that time destroys it. In discrimination cases where the employee's class does not change, it remains possible that an employer who has nothing against women *per se* when it hires a certain female will have nothing against women *per se* when it fires that female, regardless of the number of years that pass. Thus, a short period of time is not an essential element of the same actor inference, at least in cases where the plaintiff's class does not change.[3] Accordingly,

the district court did not misstate the law in giving the instruction.

## III.

Another issue raised by the plaintiff concerns her attempt to obtain the documents of various male supervisors by serving a subpoena duces tecum on Charles Littleton. The Company asked the court to quash this subpoena, arguing that this material could have been produced through normal discovery, and that the plaintiff was simply trying to get around the discovery deadline. The court agreed, and quashed the subpoena. The plaintiff challenges this action, arguing basically that there is nothing in the federal rules *requiring* her to perform discovery, and that if she wants to discover documents using a subpoena duces tecum, then she should be allowed to do so.

In *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338 (6th Cir.1984), we held that "[t]he decision to quash a pre-trial subpoena duces tecum 'must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns on factual issues.'" *Id.* at 354 (citations omitted). *Ghandi* is similar to the present case, in that the plaintiff in *Ghandi* was using the subpoena duces tecum to reopen discovery on the eve of trial. We find *Ghandi* controlling. Because the plaintiff here had adequate opportunity to discover this material through the normal discovery process, the district court did not abuse its discretion in quashing the subpoena.[4]

## IV.

In addition, the plaintiff has raised a number of other issues. We have examined these carefully and conclude that they do not merit

---

2. We note that in age discrimination cases, a short period of time may be required in order to infer a lack of discrimination. This is simply because the employees' classification changes over time—an employee hired at thirty is not the same employee fired at sixty.

3. The appellant does not contend separately that the district court, under the circumstances, erred in the charge by stating that the same actor inference was a "strong inference." We therefore do not address the propriety of describing the inference as a necessarily "strong" one.

4. We note that the documents asked for in the subpoena duces tecum dealt with the personnel files of the male supervisors, and that the plaintiff had already received these files through normal discovery. The plaintiff claims that she did not have the entire personnel files, and that she was using the subpoena duces tecum to obtain specific personnel cards that were located only at the Dayton terminal. There is no indication, however, that these personnel cards were of material importance to the plaintiff's claim.

any discussion. Accordingly, the district court is AFFIRMED.