Desharnais v. NH Mailing Services    CV-94-447-SD  04/02/96
                  UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


Robert Desharnais


     v.                                        Civil No. 94-447-SD


N.H. Mailing Services, Inc.


                              O R D E R


     In this civil action, plaintiff Robert Desharnais asserts a

singular claim for unlawful employment discrimination in

violation of the Age Discrimination in Employment Act of 1967

(ADEA), 81 Stat. 602, as amended, 29 U.S.C. § 621, et seq.,

against defendant N.H. Mailing Services, Inc. (NHMS), a New

Hampshire corporation.

     Presently before the court is defendant's motion for summary

judgment, to which plaintiff objects.[1]

_____

     [1]Defendant has filed a motion for leave to supplement its
memorandum of law on summary judgment.  Plaintiff has objected,
further requesting 20 days to file his own addendum should
defendant's motion be granted.  Document 21.  In view of the
April 3, 1996, final pretrial scheduled for this matter, as well
as the ample briefing accompanying the original motion and
objection, defendant's motion for leave to file an addendum
(document 20) is herewith denied.

## Background

On September 15, 1993, plaintiff Robert Desharnais, then fifty-five years of age, was terminated from defendant NHMS, nearly five years after his initial hire.[2]  Timothy Dugal, president of NHMS, was responsible for plaintiff's hire as well as his subsequent termination.

Defendant's asserted grounds for terminating Desharnais' employment are three-fold: (1) failure to train, as was his responsibility, Steven Blouin, defendant's production supervisor; (2) plaintiff's alleged uncooperative, rude, and otherwise poor treatment of other NHMS employees; and (3) the resignation of Peter Livernois, an NHMS sales executive, allegedly precipitated by plaintiff's conduct.

On or about September 16, 1993, NHMS reorganized its management structure, purportedly eliminating plaintiff's former production manager position and creating the new position of general manager, which included all of the production manager duties in addition to other responsibilities.  NHMS has not hired a production manager subsequent to plaintiff's termination, but did hire Paul D. Drapeau, age 32, to fill the position of general manager.

---

[2]Plaintiff was initially hired on September 26, 1988, by defendant's predecessor corporation, N.H. Presort Mailing Services, Inc.

## Discussion

### 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); Maldonado-Denis, supra, 23 F.3d at 581.

3

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, ___ U.S. ___, 115 S. Ct. 2247 (1995).

> A "genuine" issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. Maldonado-Denis, 23 F.3d at 581. In other words, a genuine issue exists "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" Id. (quoting Garside [v. Osco Drug, Inc.,] 895 F.2d [46,] 48 [1st Cir. 1990)]. A "material" issue is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).

"'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" National Amusements, supra, 43 F.3d at 735 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations, . . . rank speculation, or . . . improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st

4

Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)).

2.  The Merits

"Absent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove [his discrimination] case by resort to a burden-shifting framework." Smith v. F.W. Morse, Inc., 76 F.3d 413, 421 (1st Cir. 1996) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-46 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The initial burden, which is "'not onerous,'" Lehman v. Prudential Ins. Co., 74 F.3d 323, 328 (1st Cir. 1996) (quoting Burdine, supra, 450 U.S. at 253) (other citation omitted), is put upon plaintiff to establish his prima facie case for discrimination, see Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). In the context of the ADEA, plaintiff must prove that he (1) was a member of the protected class (i.e., over age 40), (2) met the employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was replaced by another with qualifications roughly equivalent to his own. See Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995);

5

Smith, supra, 40 F.3d at 15. Accord O'Connor v. Consolidated Coin Caterers Corp., ___ U.S.L.W. ___, ___, 1996 WL 142564, at *2 (U.S. Apr. 1, 1996) (No. 95-359) ("the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case"). For the purposes of the motion sub judice, defendant has assumed, and the court will so honor, that plaintiff has established such prima facie case for discrimination. See Defendant's Memorandum of Law at 7. A presumption of discrimination thus arises.

The second stage of the burden shifting analysis requires defendant to articulate, not prove, "a legitimate, nondiscriminatory reason for its actions." Greenberg, supra, 48 F.3d at 26; see also Burdine, supra, 450 U.S. at 253 (defendant's burden at second stage is one of production, not persuasion). According to NHMS, plaintiff was terminated for the following business reasons: "plaintiff did not cooperate with or treat with respect other supervisory and managerial employees; did not train Steve Blouin as he was repeatedly reminded to do; and behaved in a manner that substantially contributed to the decision of defendant's sales executive to resign." Defendant's Memorandum of Law at 7. The court finds that NHMS has sufficiently met its burden at this second stage. As such, the presumption of discrimination that arose upon plaintiff's satisfactory first

6

stage showing "vanishes," see Greenberg, supra, 48 F.3d at 26, and the burden shifts back to plaintiff for the final stage.

At this third stage, plaintiff is required to make two distinct showings in order to avoid brevis disposition of his claim. In the First Circuit, a federal age discrimination claimant "is required to show that the employer's reason was pretextual and that the actual reason for the adverse employment decision was discrimination." Lehman, supra, 74 F.3d at 327 n.2. Accord Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) ("[A] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in [the decisionmaking] process and had a determinative influence on the outcome.").

In the view of the court, plaintiff has raised a genuine issue as to pretext. Defendant identifies three specific failings of plaintiff as grounds for the termination: (1) inability to cooperate with or treat with respect other supervisory and managerial employees of NHMS; (2) refusal to train Steve Blouin; and (3) exhibited a manner of behavior that substantially contributed to the resignation of an NHMS sales executive. However, plaintiff has submitted testimony in affidavit form which, in the least, raises an issue with regard to each of plaintiff's alleged failings.

7

Ann Cartier, an NHMS employee from 1988 to 1994, asserts that "[w]hen I worked in direct mail, I often heard people swear. I don't think Bob Desharnais swore any more than a lot of other people. I heard Tim Dugal swear." Affidavit of Ann Cartier ¶ 4 (attached to Plaintiff's Objection as Exhibit C).[3] Insofar as one of the stated reasons for plaintiff's termination "was the use of profanity with his employees and his fellow managers," Deposition of Timothy Dugal at 113-14 (attached to Plaintiff's Objection), plaintiff's evidence sufficiently casts the legitimacy of such reason into doubt.

As to the alleged refusal to properly train Steve Blouin, plaintiff provides Blouin's affidavit to rebut such claim.

> 3. I was employed by New Hampshire Mail Services (hereinafter Mail Services) as a general production worker for approximately one and one half years from 1990 to 1992.
> . . . .
> 5. I thereafter left Mail Services for a higher paying position elsewhere.
> 6. I later returned to Mail Services and worked there from approximately November 1992 to December 1994.

---

[3]A similar statement is contained in the Affidavit of Clifford Durocher, an NHMS employee from 1988 to 1994. See Affidavit of Clifford Durocher ¶ 5 (attached to Plaintiff's Objection as Exhibit B) ("There was a lot of swearing at New Hampshire Mailing Services. Myself and many people were guilty of it, including Timothy Dugal. I often heard Timothy Dugal swear. He would rant and rave. On a couple of occasions I saw him kick a chair across the presort area of New Hampshire Mailing Services."). Such affidavit is unnotarized and, as such, is given little weight on summary judgment.

7.  During the second employment period I was employed by Mail Services as a production manager.
. . . .
9.  For approximately the first three months of my second employment period I worked with Bob Desharnais, who was a production manager at that time.
10.  When I returned to Mail Services in November 1992, [it] was by Tim Dugal that I was being trained to replace Bob Desharnais.
11.  After Tim Dugal fired Bob Desharnais, Tim hired Paul Drapeau to replace Bob.  Later, I found out that Tim had been planning to hire Paul for some time.  I believe that Paul Drapeau was in his early 30's when he started working at Mail Services.
12.  After Tim Dugal fired Bob Desharnais, Paul Drapeau was my supervisor.  <u>Although Tim told me that Paul was going to train me in the production supervisor position, I received very little training from Paul.</u>  In fact, I eventually left Mail Services because I was not receiving sufficient training and was not advancing as Tim had promised.
13.  <u>I received about as much training from Paul Drapeau as I received from Bob Desharnais.</u>

Affidavit of Steven Blouin ¶¶ 3, 5-7, 9-13 (attached to Plaintiff's Objection as Exhibit D) (emphasis added).  This, again, sufficiently rebuts defendant's summary judgment showing.

With respect to the third ground for termination alleged by defendant, the resignation of NHMS sales executive Peter Livernois, the evidence before the court conflicts, and therefore is best reserved for determination by the jury subsequent to trial on the merits.  <u>Compare</u> Affidavit of Timothy J. Dugal ¶ 5 (attached to Defendant's Motion as Exhibit A) ("In August 1993, Mr. Livernois submitted his resignation to me.  I subsequently

9

learned that Mr. Desharnais' conduct was a significant factor in Mr. Livernois' decision to resign.") with August 6, 1993, Letter from Peter J. Livernois to Timothy J. Dugal (attached to Plaintiff's Objection as Exhibit E) ("Due to a serious lack of productivity on my part I am leaving New Hampshire Mailing Services, Inc.").

In light of the foregoing evidentiary showings, the court finds and rules that genuine issues of material fact remain as to whether defendant's stated reasons for terminating plaintiff's employment were merely a pretext to shield underlying discriminatory motives. Consequently, the court now turns to the merits of plaintiff's other required showing--that the actual reason for the adverse employment action was discrimination.

On this issue of termination by reason of discrimination, plaintiff has put forth record evidence which, in the view of the court, is sufficient to withstand defendant's summary judgment argument. Defendant correctly states, albeit by halves,[4] the law of this circuit, noting that a strong inference of nondiscrimination in termination is raised where, as here, the hirer and the firer are the same individual. Defendant's Memorandum of Law at 13-15; see also Nedder v. Rivier College,

---

[4]What defendant omits from this statement of legal principle proves fatal to the existence of any favorable inference in this matter.

908 F. Supp. 66, 79 (D.N.H. 1995) (citation omitted).  The "strong inference" of nondiscrimination only arises, however, when the hirer and the firer are the same individual <u>and</u> "'the termination of employment occurs within a relatively short time span following the hiring.'"  <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 847 (1st Cir. 1993) (quoting <u>Proud v. Stone</u>, 945 F.2d 796, 797 (4th Cir. 1991)), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1390 (1994).

Plaintiff's termination in this matter took place some five years subsequent to his initial hire.  As such, the court finds and rules that, under the circumstances attending this litigation, defendant is not entitled to any such "strong inference" of nondiscriminatory motive in Desharnais' termination.  <u>Cf.</u> <u>Buhrmaster v. Overnite Transp. Co.</u>, 61 F.3d 461, 464 n.2 (6th Cir. 1995) (noting that "in age discrimination cases, a short period of time may be required in order to infer a lack of discrimination"), <u>cert. denied</u>, ___ U.S. ___, 116 S. Ct. 785 (1996).

The court is similarly unpersuaded by defendant's attempt to characterize Mr. Dugal's age-related comments as "stray."  Defendant's Memorandum of Law at 10-13.  Eschewing a catalogue of all the comments Mr. Dugal is alleged to have made related to Mr. Desharnais' age, the court finds plaintiff's showing sufficient

11

to raise a genuine issue of material fact.  See, e.g., Affidavit of Robert Desharnais ¶¶ 11-13 (attached to Plaintiff's Objection as Exhibit A); Cartier Affidavit ¶¶ 5-6 ("I heard Tim Dugal say . . . in August or September, 1993, . . . to a customer, 'You think you've got problems - I have a 55 year old man running my business.'  Bob Desharnais was the only 55 year old man at N. H. Mailing.  Bob Desharnais was fired within a few weeks after that.").

Finally, it is of no small import that Desharnais' putative replacement, a matter which is itself contested, was some twenty-three years his junior.  See, e.g., O'Connor, supra, ___ U.S.L.W. at ___, 1996 WL 142564, at *3 ("the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class").

Accordingly, the court further finds and rules that the controversy described herein, replete with competing facts and inferences, is best reserved for determination by a jury of eight.  See LeBlanc, supra, 6 F.3d at 843 (summary judgment appropriate only where "the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employee") (citation omitted).  Defendant's motion is thus denied.

<u>Conclusion</u>

For the reasons set forth herein, defendant's motion for summary judgment (document 8) is denied, as is defendant's motion for leave to file an addendum to said motion (document 20).

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 2, 1996

cc:  James W. Donchess, Esq.
     Mark T. Broth, Esq.

13