**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRENDA GREEN, Ed.D,

    Plaintiff - Appellant,

v.

DR. ALBERT YATES, in his official
capacity as President of Colorado
State University; ELNORA
GILFOYLE, in her official capacity as
Academic Provost at Colorado State
University; COLORADO STATE
UNIVERSITY, a state institution
through its Board; and COLORADO
STATE BOARD OF AGRICULTURE,
a body corporate,

    Defendants - Appellees.

No. 97-1263

(D.C. No. 95-S-1781)

(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

This is an appeal from the grant of summary judgment in favor of all the

defendants in a case involving allegations of race and gender discrimination in

employment. In the trial court, Plaintiff Brenda Green relied on both Title VII of

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1983 as the legal bases for her claims. On appeal, Plaintiff appears only to argue that she was entitled to a jury trial on her claim of racial discrimination and her Title VII retaliation claim. She has not argued in support of either her gender claims or her claims based on section 1983. [1] In any event, those issues were adequately addressed by the trial court, and we find no fault with its reasoning or conclusions on those matters.

Plaintiff, an African-American female, was hired by Colorado State University in 1993 as Associate Provost of Independent Studies and as an Associate Professor. Her position as Associate Provost was not renewed when it expired on December 31, 1994. Plaintiff was later informed that her teaching position also would not be renewed when it expired on May 15, 1995. The University claims that Plaintiff was discharged because her performance in both jobs was inadequate. To support its stated nondiscriminatory reason, the University relies on many affidavits and depositions which deal primarily with job evaluations. Both positive and negative evaluations are included in the record. For example, the report of the Special Evaluation Committee appointed to review

---

[1]Although Plaintiff asserts that "[t]here was a sufficient evidentiary basis for a reasonable fact finder to find that race and or gender was a substantial motivating factor," Appellant's Opening Br. at 9, she does not support this statement with any relevant evidence or argumentation.

Plaintiff's qualifications contains a negative evaluation of Plaintiff. [2] The record also includes an opinion letter by Dr. Darrell M. Millner, Professor of Black Studies at Portland State University in Portland, Oregon, in which he discusses institutional racism and concludes that race was a cause of the decision not to renew Plaintiff's employment contracts with the University. See Appellant's App. at 157-62. The trial court did not specifically mention Dr. Millner's letter in its order granting summary judgment.

In its decision granting summary judgment to Defendants, the trial court concluded that Plaintiff did not establish a prima facie case of racial discrimination. In particular, the trial court found that Plaintiff did not raise genuine issues of material fact as to whether similarly situated employees outside of the protected class were treated differently than Plaintiff. [3] In the alternative,

---

[2]Plaintiff argues that the appointment of the Committee itself supports her claim of discrimination. However, the record indicates that the University appointed special performance evaluation committees on three prior occasions during Defendant Elnora Gilfoyle's tenure as Academic Provost. These committees conducted tenure revocation investigations and performance evaluations of white male professors. See Appellee's App. at 77-79. In light of this evidence, we do not think this evidence supports Plaintiff's discrimination claim.

[3]The district court also noted that Plaintiff "appear[ed] to admit that she was not adequately qualified to perform her job without 'mentoring.'" See Appellant's App. at 278. However, beyond this observation, the district court does not make a determinative finding as to whether Plaintiff satisfied the prong of the prima facie case requiring her to show that she was qualified for and satisfactorily performing her jobs.

the court concluded that Plaintiff failed to demonstrate that Defendants' nondiscriminatory reason for their decision not to renew Plaintiff's employment contracts was pretextual. The court also found that Plaintiff did not establish a prima facie case of retaliation because she did not show that "but for" filing a discrimination claim against Defendants she would not have been subjected to the alleged adverse employment action.     See id. at 284.

In this appeal, Plaintiff argues that the district court erred in granting summary judgment to Defendants on her Title VII claims of racial discrimination and retaliation for filing a civil rights complaint. With respect to her discrimination claim, Plaintiff contends that she established a prima facie case of discrimination and that she presented sufficient evidence of pretext to discredit Defendant's proffered reason for failing to renew Plaintiff's employment contracts. Specifically, Plaintiff claims that the positive evaluations of her performance included in the record cast doubt on the credibility of Defendants' assertion that they decided not to renew her employment contracts due to her unsatisfactory performance. Plaintiff also argues that the trial court failed to evaluate the evidence on both her discrimination and retaliation claims in a light most favorable to her. On her retaliation claim, for example, Plaintiff asserts that shortly after she filed a discrimination complaint, Provost Gilfoyle recommended not renewing Plaintiff's employment contracts. Although Plaintiff does not

-4-

specifically so state, the implication of this assertion is that the temporal proximity of her complaint to the recommendation not to renew her employment raises an inference of retaliation.

Cases involving adverse action against a person of a protected class are always difficult, particularly at the summary judgment stage. Such cases require specific review of all relevant facts to determine whether there is a demonstrable nexus between the adverse employment action and, in this case, race. Because the nexus can be proved by circumstantial as well as direct evidence, see United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 n.3 (1983), we must review the evidence de novo, drawing all inferences in favor of the plaintiff, to determine whether the trial court was correct in forming its conclusions and judgment. See Trujillo v. University of Colo. Health Sciences Ctr., 157 F.3d 1211, 1213 (10th Cir. 1998).

After careful review, we are persuaded that, as a matter of law, no reasonable inference can be drawn that Defendants' actions were motivated by race or in retaliation for Plaintiff's filing a discrimination complaint. We believe that the trial court's Order filed June 6, 1997, accurately states and applies the law to the facts in the record. We endorse its opinion in all respects except one. In determining that Plaintiff failed to show that Defendants' reason for failing to renew her employment contracts was pretextual, the court relied in part on a

doctrine under which a presumption of non-racial animus arises when the same person who hires the plaintiff also discharges the plaintiff within a short period of time. See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996); Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996); Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995), cert. denied, 516 U.S. 1078 (1996); Rand v. CF Indus., Inc., 42 F.3d 1139, 1147 (7th Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994); Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 174-75 (8th Cir. 1992); Proud v. Stone, 945 F.2d 796, 797-98 (4th Cir. 1991). We have no occasion to reach that issue and, therefore, we neither address nor adopt it. We leave the doctrine to another day when it is squarely presented so that this court can give it the benefit of plenary consideration.

To the trial court's reasoning we add only that the existence of positive as well as negative employment evaluations is not, by itself, sufficient evidence from which to infer racial animus. Something more is required. That something more is missing from this case. Moreover, Dr. Millner's opinion regarding the cause of Defendants' decision not to renew Plaintiff's employment lacks a sufficient basis in the facts of this particular case to alter our judgment. [4]

---

[4]In her brief, Plaintiff correctly states that the trial court did not specifically cite to Dr. Millner's opinion letter. Nevertheless, the court did discuss, in general terms, testimony involving institutional racism. On this subject, the court stated:

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge

---

"The issue to be determined is not whether institutional racism exists in general, but whether these Defendants in the particular decisions challenged here intentionally discriminated against Plaintiff because of her protected class characteristics." Appellant's App. at 282.