**Arthur MCDANIEL, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. 5:99–CV–2761.**

United States District Court, N.D. Ohio, Eastern Division.

May 15, 2000.

David A. Van Gaasbeek, North Canton, OH, for Arthur McDaniel, Plaintiffs.

Bradley A Sherman, Duvin, Cahn & Hutton, Cleveland, OH, Gregory S Muzingo, Wal–Mart Stores, Inc., Legal Department, Bentonville, AR, Richard C Hubbard, III, Duvin, Cahn & Hutton, Cleveland, OH, for Wal–Mart Stores Inc., Defendants.

## OPINION AND ORDER

GWIN, District Judge.

On April 24, 2000, Defendant Wal–Mart Stores, Inc. ("Wal–Mart") filed a motion for summary judgment on Plaintiff Arthur McDaniel's employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") [Doc. 16]. For the reasons set forth below, the Court grants Wal–Mart's motion.

### I.

The present action arises from Plaintiff McDaniel's termination from Defendant Wal–Mart's employ in April 1999. McDaniel, an African–American, alleges that Wal–Mart terminated him from his position as an in-store loss prevention employee on account of his race. In response, Wal–Mart says McDaniel's termination resulted from his disregard of company policy in pursuing a shoplifting suspect in a vehicle chase.

In December 1998, Wal–Mart hired McDaniel as an in-store loss prevention employee. James Ailes, Wal–Mart's supervisor for loss prevention in the Akron/Canton area approved McDaniel's hiring. Wal–Mart assigned McDaniel to Wal–Mart's store in Green, Ohio.

Upon beginning his employment, McDaniel received training with regard to Wal–Mart's policies and procedures for loss prevention personnel. As part of his training, McDaniel was required to review several training documents that set forth Wal–Mart's policy prohibiting off-property and vehicular pursuits of shoplifting suspects. McDaniel signed each of these documents, thereby saying that he read and understood the policies set forth therein.

The first several months of McDaniel's service as an in-store loss prevention employee were without incident. Indeed, Ailes gave McDaniel a favorable evaluation at his ninety-day review and even used McDaniel to help another in-store loss prevention employee improve her surveillance skills.

However, on April 20, 1999, McDaniel engaged in a course of conduct that Wal–Mart says resulted in his termination. On that date, McDaniel pursued shoplifting suspects in an off-property vehicle chase.

On that date, McDaniel and Brenda Mills, another in-store loss prevention employee, observed an individual place a portable compact disc player under his coat and exit the store. McDaniel chased the suspect into the parking lot, finally reaching the suspect as the suspect attempted to enter an accomplice's pick-up truck. The suspect resisted McDaniel's attempt to detain him, eventually pulling both himself and McDaniel into the bed of the pickup truck. At this point, the suspect's accomplice drove the vehicle out of the parking lot.

James Jester, a loss prevention employee assigned to patrol Wal–Mart's parking lot, followed the suspects in a truck owned by Wal–Mart. Brenda Mills, along with a store manager, also followed the suspects in a separate vehicle.

Jester followed the pick-up truck into a nearby parking lot, where McDaniel was finally able to exit the truck bed. Motioning for Jester to "move over," McDaniel climbed into the driver's seat of the Wal–Mart truck and began pursuing the suspects. McDaniel aggressively pursued the suspects, twice colliding with the suspects' vehicle. However, McDaniel was unable to apprehend the suspects. After eventu-

ally ceasing his pursuit, McDaniel contacted the local police who later apprehended the suspects.

That same day, loss prevention supervisor Ailes interviewed Jester, Mills, and McDaniel to determine exactly what had transpired. Ailes concluded that McDaniel had clearly violated Wal–Mart's policies regarding the pursuit of shoplifting suspects. After discussing the matter with his supervisor, Ailes notified McDaniel that he was fired immediately.

On November 12, 1999, McDaniel filed the present action alleging that Wal–Mart terminated him on account of his race in violation of Title VII. McDaniel says that although three loss prevention employees pursued the shoplifting suspects away from store property, only he, the lone African–American, was terminated for doing so.

Wal–Mart now seeks summary judgment on McDaniel's Title VII claim. Wal–Mart says that it did not terminate the other loss prevention employees because they followed the suspects to ensure McDaniel's safety, whereas McDaniel aggressively pursued the suspects to make an apprehension. This conduct, according to Wal–Mart, was in clear violation of company policy and warranted McDaniel's discharge.

The Court considers Wal–Mart's motion for summary judgment below.

## II.

A court may grant summary judgment only if the materials properly before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

### III.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). Thus, a plaintiff can recover under Title VII by showing he suffered racially-motivated disparate treatment by his employer.

To prevail in a disparate treatment action, a plaintiff must prove by a preponderance of the evidence that he suffered intentional discrimination. *See Grano v. Dep't of Development of City of Columbus,* 637 F.2d 1073, 1081 (6th Cir.1980). A plaintiff need not offer direct evidence of such discrimination. However, when seeking to prove intentional discrimination with circumstantial evidence, the plaintiff must make the showing described in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The *McDonnell Douglas–Burdine* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case of employment discrimination. To make a *prima facie* case, the plaintiff must show that he (1) was a member of a protected class; (2) suffered an adverse action; (3) was qualified for the position; and (4) was replaced by a person outside the protected class or was treated differently from a similarly-situated employee outside the plaintiff's class. *See Wine v. Wal–Mart Stores, Inc.,* 1999 WL 191394, *1 (6th Cir. Mar.19, 1999); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992).

If the plaintiff makes a *prima facie* case, the defendant is presumed to have violated Title VII. To overcome this presumption, the defendant must set forth evidence showing that the adverse employment action arose from a legitimate, nondiscriminatory reason. *See id.*

If the defendant does so, the burden shifts back to the plaintiff to prove pretext. *See id.* To show pretext, a plaintiff must do more than merely prove that a defendant's nondiscriminatory reason for an adverse employment action is false. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Rather, a plaintiff must meet the ultimate burden of showing the defendant engaged in intentional discrimination. *See id.*

Here, Plaintiff McDaniel says Defendant Wal–Mart discriminated against him on account of his race. Because he offers no direct evidence to prove such discrimination, McDaniel must offer evidence sufficient to make the showing described above to establish a claim under Title VII.

Thus, McDaniel must initially offer evidence sufficient to establish a *prima facie* case of discrimination. The parties do not dispute that McDaniel has satisfied the first three elements of a *prima facie* case. Wal–Mart concedes that McDaniel is a member of a protected class as an African–American, was qualified to perform his job as a loss prevention employee, and suffered an adverse employment action when he was terminated. However, Wal–Mart does contest whether McDaniel has established the fourth element of a *prima facie* case, *i.e.,* that McDaniel was treated differently from a similarly-situated employee outside his class or was replaced by someone outside his class.

McDaniel first attempts to establish this element of his *prima facie* case by arguing that Wal–Mart treated him differently from similarly-situated employees outside his class. McDaniel says that although Brenda Mills and James Jester, both Caucasian, joined him in pursuing the shoplifting suspects off store property, only he was terminated for violating Wal–Mart's policy prohibiting such pursuits.

Individuals are similarly-situated only if they "dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without

such differentiating of mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583. In the context of alleged discriminatory discipline, the ultimate question is whether employees engaged in misconduct of "comparable seriousness." *Harrison v. Metropolitan Gov't of Nashville and Davidson County,* 80 F.3d 1107, 1115 (6th Cir.1996).

Here, McDaniel engaged in conduct considerably more culpable than either Mills or Jester. By his own admission, McDaniel aggressively pursued the suspects as he drove a Wal–Mart vehicle, twice bumping into the suspects' pick-up truck. And McDaniel pursued the suspects for the sole purpose of facilitating their apprehension.

In stark contrast, Mills and Jester followed the suspects to ensure McDaniel's safety. Further, no evidence suggests that Mills or Jester drove a Wal–Mart vehicle in a dangerous manner in order to keep pace with the suspects. Although they may have technically violated Wal–Mart's pursuit policy by following shoplifting suspects off store property, neither committed a violation even remotely on par with McDaniel's misconduct.

Arguing otherwise, McDaniel insists he is no more culpable than Jester, who drove along with McDaniel during his pursuit of the suspects. McDaniel says Jester actively participated in the pursuit by telling McDaniel "what to look out for as he attempted to write down the license plate number of the fleeing vehicle." When asked if he wished to exit the vehicle on four separate occasions, McDaniel says Jester responded: "No way, I am with you buddy."

However, even if he assisted McDaniel once the pursuit was underway, Jester did not instigate the pursuit. And it was McDaniel, not Jester, who exposed Wal–Mart to potential liability by driving the

Wal–Mart vehicle in a dangerous manner during the pursuit. Although Jester could have exited the vehicle before the pursuit began, McDaniel admits that Jester, who suffers from a respiratory illness, appeared "frozen" at the wheel of the Wal–Mart truck when McDaniel asked him to move out of the driver's seat.

■ In assessing the conduct of the three loss prevention employees, Wal–Mart had sufficient information to determine that McDaniel's actions warranted dismissal while Mills and Jester engaged in conduct insufficient to justify discipline. Thus, McDaniel cannot show that he was treated differently than similarly-situated employees outside his class.

McDaniel next seeks to satisfy the fourth element of his *prima facie* case by showing that Wal–Mart replaced him with an individual outside his class. In particular, McDaniel says Wal–Mart hired an Asian man as his permanent replacement.[1]

However, Wal–Mart did not hire a new loss prevention employee until six months after McDaniel's discharge. Such a significant interval between a plaintiff's termination and the hiring of a new employee substantially weakens any inference of discrimination that might otherwise arise from a subsequent hire. *See Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir. 1992).

Yet the Court need not decide whether evidence of McDaniel's eventual replacement is sufficient to give rise to an inference of discrimination. Even if he can make out a *prima facie* case of discrimination, McDaniel cannot establish pretext.

A plaintiff bears the burden of proving pretext only when an employer offers a legitimate, nondiscriminatory reason for an adverse employment action. Here, Wal–Mart says it terminated McDaniel because he violated company policy by dangerously

---

**1.** McDaniel also says Wal–Mart temporarily reassigned his duties to a Caucasian loss prevention employee. However, "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992).

pursuing the shoplifting suspects off store property. Thus, to prevail, McDaniel must show this reason was pretextual.

As explained above, the burden of proving pretext requires a plaintiff to do more than show the defendant's proffered reason for an adverse employment action is false. A plaintiff must show that the defendant engaged in intentional discrimination. However, evidence showing that the defendant has offered a false justification for an adverse employment action is sufficient to present a jury question on the ultimate issue of intentional discrimination. *See Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

■ When trying to show discrimination based on the credibility of a defendant's proffered justification, a plaintiff is required to prove either (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate his termination, or (3) that the proffered reason was insufficient to motivate his termination. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

McDaniel attempts to show pretext by attacking the credibility of Wal–Mart's proffered explanation for his termination. Specifically, McDaniel suggests that his pursuit of the shoplifting suspects did not actually motivate his termination. In support of this argument, McDaniel again offers evidence showing that Wal–Mart failed to discipline Brenda Mills or James Jester for following the suspects off store property.[2]

The Court finds that this evidence would not allow a reasonable jury to conclude Wal–Mart terminated McDaniel on account of his race. As the Court has already observed, the undisputed facts in this case show Wal–Mart was justified in treating McDaniel differently from Mills and Jester.

Moreover, the individual who terminated McDaniel, James Ailes, had also hired McDaniel just four months earlier. Thus, a "strong inference" exists that discrimination was not a motivating factor in Ailes's decision to terminate McDaniel. *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461, 464 (6th Cir.1995) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991). To overcome this inference, McDaniel must do more than simply show he was treated less favorably than his less culpable coworkers.

IV.

For the reasons set forth above, the Court finds that Plaintiff McDaniel has failed to offer material evidence in support of his discrimination claim under Title VII. Accordingly, the Court grants summary judgment to Defendant Wal–Mart.

IT IS SO ORDERED.

---

**2.** McDaniel also offers evidence regarding the circumstances of his earlier termination from Wal–Mart's employ in 1995. He says that Wal–Mart terminated him for making a questionable apprehension, but only reprimanded a Caucasian employee who also made a questionable apprehension. McDaniel offers no further evidence regarding these apprehensions. The Court fails to see how this evidence tends to show Wal–Mart's termination decision in 1999 arose not from McDaniel's misconduct, but rather discriminatory animus.