**Walter Wayne PHELPS,**
**Plaintiff–Appellant,**

v.

**JONES PLASTIC & ENGINEERING**
**CORPORATION, Defendant–**
**Appellee.**

No. 00–5450.

United States Court of Appeals,
Sixth Circuit.

Sept. 19, 2001.

Before SUHRHEINRICH and SILER, Circuit Judges; HOOD, District Judge.*

* The Honorable Joseph M. Hood, United States District Court Judge of the Eastern District of Kentucky, sitting by designation.

SILER, Circuit Judge.

Plaintiff Walter Wayne Phelps appeals the district court's grant of summary judgment to defendant Jones Plastic & Engineering Corporation. Phelps argues that the district court misapplied the summary judgment standard and the "same actor" inference against discriminatory animus in this case. He also contends that he presented sufficient evidence to establish pretext. We **AFFIRM**.

## I. BACKGROUND

In 1989 at the age of 52, Phelps was hired as an hourly worker for the maintenance department at Jones Plastic's plant in Leitchfield, Kentucky. In April 1994, David Elliot, the plant manager, promoted Phelps to maintenance manager when he was 56 years old. Prior to his promotion, he was viewed as the person in charge of the maintenance department at the Leitchfield plant when it opened in 1989, and during periods when the department lacked an official manager.

In May 1994, Elliot reviewed Phelps's work performance and rated him "below average" in "job attitude" and "interest/enthusiasm for job," but "average" and "above average" in all other categories. Elliot did not complete another employee review for Phelps even though it was an ISO compliance requirement and plant policy.

According to Elliot and other plant personnel, when Phelps became maintenance manager conflicts between the maintenance department and other departments arose, along with other problems and complaints. From 1995 to 1996, Elliot recorded several issues regarding Phelps's managerial performance in his personnel file, including: 1) not allowing maintenance personnel to look at maintenance tracking records, 2) not allowing use of the department office, 3) being "way too secretive,"

4) taking all the credit for maintenance accomplishments, 5) spending too much time in the office and not enough time on the floor supporting maintenance personnel, 6) dictating what and how to repair rather than allowing maintenance staff to use their own initiative, 7) not leading by example, 8) losing the respect of other departments, 10) lax follow-through on checking job completion, 11) ineffective discipline of maintenance department, and 12) creation of a negative or hostile work environment. Elliot met with Phelps to discuss these complaints on several occasions; however, Phelps often objected to the complaints as groundless.

According to Phelps, the maintenance department was responsible for minimizing "downtime," or the out-of-service time for the plant's presses, and under his leadership, the department achieved the best "downtime" record among Jones Plastic's plants. Elliot counters that Phelps was more focused on reducing the "downtime" charged to his department in order to maintain its ranking than on plant performance.

Phelps had adversarial relationships with three company employees. First, he had disagreements with Jim Laha, the shop operations manager, over "downtime" allocations to the maintenance department and other issues relating to "downtime." Laha was viewed by his peers as assertive and a "little rough around the edges." In early 1996, Phelps, as maintenance manager, was placed under Laha's supervision while Elliot retained ultimate authority for hiring and firing. In addition, Phelps asserts that Terry Tyra, who supervised robotics and purchasing, would cancel his purchase orders, thus extending "downtime" charged to the maintenance department. Tyra was also in charge of Central Storage, which became so disorganized

that the maintenance department had to reorganize it. Also, Phelps alleges that David Johnson, a maintenance department employee that Phelps trained for a future management position, conspired with Laha to push Phelps out of his job. Phelps contends that the complaints listed in the critical memos in his personnel file came from Johnson and Laha. In addition, he states that Laha, Tyra, and Johnson referred to him as "old man," "old fart," "old asshole," and "old m-f-."

On June 4, 1996, Elliot terminated Phelps, when he was 59 years old. Phelps requested to stay on as a maintenance technician, but, after consideration, Elliot decided not to keep him on staff. Between the termination meeting and the written response to Phelps's request, Elliot, Joe Weiss, corporate director of human resources, and Nellie Denham, plant manager of human resources, allegedly decided to conduct interviews with Phelps's coworkers in the maintenance department, which was not a common practice.

After Phelps's discharge, the maintenance department was reorganized. The new position of maintenance team leader was created to coordinate the day-to-day tasks of the maintenance technicians and assist in training new or underskilled staff. Also the position of maintenance manager/manufacturing engineer was established to handle the former maintenance manager's administrative and inter-departmental relations duties. Elliot appointed Johnson, age 24, to the position. Elliot also appointed Tyra as maintenance manager while he maintained his prior position as manufacturing engineer.

Later, Phelps timely filed a complaint alleging wrongful discharge based on age discrimination in federal district court under 29 U.S.C. § 621 *et seq.* after exhausting his administrative remedies before the Equal Opportunity Employment Commis-sion and receiving a Right–to–Sue letter. Jones Plastic moved for summary judgment. In reviewing Phelps's claim, the district court assumed that he presented a *prima facie* case of age discrimination and focused on his evidence of pretext.

Jones Plastic stated that it fired Phelps for nondiscriminatory reasons, which entailed his bad attitude, inability to work with other departments, disdain for management, lack of interpersonal skills, inappropriate and continual disagreement with superiors, and unnecessary confrontations. The district court determined that Phelps's reliance on evidence that his subordinates felt he did a good job and that one employee had never heard complaints that he was argumentative was insufficient to show that the company's assertions about his bad attitude and inability to get along with other departments were factually false. It also found that the alleged ageist comments by Laha, Tyra, and Johnson were not made by decisionmakers and thus did not satisfy the plaintiff's burden of demonstrating discriminatory animus.

In addition, Phelps argued that the company's proffered reasons were insufficient motive for discharge because other younger employees were not discharged for similar conduct. The district court rejected this assertion as Laha was the only employee referred to who held a position similar to Phelps and his alleged assertive behavior was not substantially similar to the deficient managerial and interpersonal behavior the company cited as just cause for Phelps's discharge. The district court further discounted the likelihood of discriminatory animus as a motivating factor based on the "same actor" inference recognized in *Buhrmaster v. Overnight Transp. Co.,* 61 F.3d 461, 463 (6th Cir.1995), because Phelps was promoted and fired by Elliot within two years. On these

grounds, it granted the defendant's motion for summary judgment.

## II. STANDARD OF REVIEW

In defining the standard of review, Phelps relies on *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), an age discrimination case, in which the Supreme Court analogized that similar standards of review apply to summary judgment motions under Rule 56, applicable here, and Rule 50 motions for judgment as a matter of law. He argues that the district court failed to give credence to evidence supporting his claim and impermissibly considered evidence favoring Jones Plastic.

While Phelps is correct that the review standards under Rules 50 and 56 are similar, they are not the same. *Reeves's* standard for Rule 50 motions focuses on situations where "a party has been fully heard on an issue" at trial and the defeated party questions whether there was "legally sufficient" evidence for the jury to rule in the other party's favor. 530 U.S. at 149. In considering a motion for summary judgment, a court does not have the benefit of the full "quantum of evidence produced" at a trial. *Wexler v. White's Fine Furniture, Inc.,* 246 F.3d 856, 870 (6th Cir.2001) (concurring opinion, Batchelder, J.). More fundamentally, the summary judgment standard addresses the limited, preliminary question of whether the plaintiff has produced sufficient evidence to demonstrate that a genuine issue of fact exists for the jury to decide, rather than the broader, decisive question of whether plaintiff's evidence proves his case. *See id.*

As such, this court reviews *de novo* the district court's grant of summary judgment. *See Bush v. Dictaphone Corp.,* 161 F.3d 363, 367 (6th Cir.1998). To defeat a properly supported summary judgment motion, the nonmoving party must show that there is affirmative evidence upon which the jury could reasonably find in his favor. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989).

## III. DISCUSSION

■ Under the Age Discrimination in Employment Act, "[o]nce the plaintiff has made a prima facie case, the burden shifts to the defendant to 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason.'" *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1082 (6th Cir.1994) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Because Jones Plastic presented six legitimate, non-discriminatory reasons for the discharge, Phelps must show by a preponderance of the evidence that the proffered reasons are a pretext for age discrimination under at least one of three standards. *See id.* at 1083–84.

■ First, Phelps attempts to show that "the proffered reasons had no basis *in fact,*" through evidence showing that the bases given for the termination never happened. *Id.* at 1084. Under this prong, he admits that he had professional conflicts with Elliot, Laha, Tyra, and Johnson. However, his assertions that his frustration over these issues produced his bad attitude and that other employees felt that he did a good job is not sufficient evidence to show that his employer's explanation for his discharge is factually false. Rather, his admissions confirm that the factual bases given for his termination actually occurred.

■ Phelps also seeks to demonstrate that his employer's reasons "were insuffi-

cient to motivate the discharge," through evidence that other employees "were not fired even though they engaged in substantially identical conduct" but were not discharged. *Id.* He contends that the company's view of his combative behavior and bad attitude was tainted by Laha and Johnson who purposely sought to compromise his position with the company. Further, he states that a receiving inspector, a shipping department employee, an employee in Laha's department, and Laha had altercations and complained but they were not discharged.

■ To show that Jones Plastic's reasons were a pretext for age discrimination, Phelps has the burden of establishing that the other employees engaged in "substantially identical conduct." *Id.* While he alleges that these individuals were argumentative, complained, or had bad tempers, his assertion is thinly based on the limited comments of a human resources director. From this evidence, it is not discernable that any of these individuals showed disdain for management, inappropriately and continually disagreed with their superiors, and were unable to work with other departments. While Laha was a supervisor, his allegedly distrustful and assertive behavior is not substantially identical to the documented accounts of Phelps's adverse conduct. Thus, the district court correctly ruled that Phelps falls short of providing direct evidence that Jones Plastic's reasons were insufficient motive for his termination.

■ Phelps's key argument of pretext falls under the third prong where he "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Id.* (emphasis in original). He contends that Elliot, Laha, Tyra, and Johnson made ageist comments.

He focuses specifically on Laha as a key decisionmaker in his termination because Elliot conferred with him to determine whether Phelps's conduct had improved. Specifically Phelps alleges that Laha viewed him as a "thorn in his paw" and wanted to get rid of him because he viewed him as too old for the job.

■ The district court considered the alleged ageist comments to be "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" which cannot "satisfy the plaintiff's burden" to demonstrate discriminatory animus. *Bush,* 161 F.3d at 369. Based on this standard, Tyra and Johnson's alleged comments are of no value because they were nondecisionmakers. In addition, Phelps fails to cite proof that Elliot made ageist comments about him. In evaluating Laha's alleged insults, the applicable standard is whether he acted as a decisionmaker by significantly contributing to the termination decision. *See id.* (stating that the plaintiff did not present proof that "anyone connected with the decisions to demote or terminate him may any such age-based comments"); *Wells v. New Cherokee Corp.,* 58 F.3d 233, 237 (6th Cir.1995) (stating that regardless of the company's formal hierarchy, the plaintiff's supervisor "contributed significantly to the decision" to discharge him).

Phelps, however, does not show that any ageist comments by Laha were related to the decision process itself, but rather the record shows them to be isolated comments, "'too abstract ("...")' to support a finding of age discrimination.'" *See Carpenter v. Western Credit Union,* 62 F.3d 143, 145 (6th Cir.1995) (quoting *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989)). Though Phelps attempts to show other evidence of Laha's invidious view of him, he erroneously attributes another witnesses's "thorn in his

paw" comment to Laha. Further, his evidence does not include any proof that Laha viewed him as too old for the job.

■ Finally, the district court applied the rule that "'where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.'" *Buhrmaster*, 61 F.3d at 463. Because Phelps was promoted at age 56 and fired at age 58 by Elliot, it held that discriminatory animus was an unlikely motivating factor in Phelps's discharge.

■ Phelps argues that the district court erroneously applied this "same actor" standard because Elliot did not hire him. In addition, he asserts some degree of discriminatory animus from the fact that Elliot waited two years from the departure of the prior maintenance manager before promoting him. However, we did not limit the inference that the employer lacked discriminatory animus to cases where the same person hired and fired an employee. *See id.* at 464. Rather this court qualifies the strength of the inference according to the period of time between the hiring and firing or the promotion and firing of an employee by the same person. *See id.* Thus, the district court appropriately applied the "same actor" standard in this case.

**AFFIRMED.**