Gerauld (Gerry) and Josephine (JoAnn) Gismondi, plaintiffs-appellants, appeal a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment filed by defendants-appellees MT Mortgage Corporation (MT), Manufacturers and Traders Trust Company (MT Bank), Nicholas L. Buscaglia, James J. Beardi, and Gary S. Hutchings. We affirm in part and reverse in part the judgment of the trial court.
In February 1992, appellants were hired and assigned positions of assistant vice presidents of MT Bank and vice presidents of MT Mortgage. Appellants state in their complaint that Buscaglia, Beardi, and Hutchings "were at various times supervising employees of MT directly supervising [appellants]." Appellants worked together in an office in Columbus, Ohio, and were also married during the time that they were employed by MT.
On March 29, 1994, appellants were terminated from their employment with MT. They were informed of their termination by Buscaglia, Hutchings, and Fred Pawlikowski. A memo dated April 6, 1994 from Pawlikowski stated: "Ms. Gismondi was terminated for her unpredictable and, at times, hostile style of management and Mr. Gismondi for his inability to consistently meet his business sales objectives." Gerry was fifty-one years old and JoAnn was forty-nine years old at the time of their termination. William Case was promoted to be the new manager of the Columbus office. Case was thirty-four years old at the time appellants were terminated.
On October 25, 1995, appellants filed a complaint against appellees alleging in part that: (1) Gerry was terminated "on account of his age and was a willful violation of R.C. §4112.02(A) and (N), and R.C. § 4112.99, in wanton and reckless disregard for [Gerry's] rights and sensibilities," and (2) JoAnn was terminated "on account of her age and sex and was a willful violation of R.C. § 4112.02(A) and (N), and R.C. §4112.99, in wanton and reckless disregard for [JoAnn's] rights and sensibilities."
During discovery, appellants were questioned concerning the state of their marriage while they were employed by MT. Appellants refused to answer these questions claiming that this information was protected by spousal privilege. On September 16, 1996, appellees filed a "Motion to Compel" pursuant to Civ.R. 37(A) requesting the court to order appellants to answer questions concerning the state of their marriage. The trial court sustained appellees' motion on March 20, 1998.
Appellees filed a motion for summary judgment on September 3, 1996, arguing that appellants had presented insufficient evidence supporting a claim of age discrimination. Appellees also argued that JoAnn's "sex discrimination" claim was not supported by the evidence because JoAnn "admitted that she did not experience any incident of sexual harassment that affected her in any way, and she never complained to anyone of any sexual harassment."
On February 23, 1998, the trial court overruled appellees' motion for summary judgment as it related to Gerry's age discrimination claim, and sustained the motion as it related to JoAnn's sexual harassment claim. On March 5, 1998, appellees filed a "Motion for Reconsideration" with the trial court requesting the court to reconsider its decision overruling appellees' motion for summary judgment as it related to Gerry's age discrimination claim. Appellants also filed a "Motion for Reconsideration" claiming that the trial court erred in granting summary judgment in favor of appellees as to JoAnn's claim of sexual harassment.
On April 22, 1998, the trial court ruled on the parties' motions for reconsideration. The court held that it should have sustained appellees' motion for summary judgment as to Gerry's age discrimination claim and found that appellees "are entitled to judgment as a matter of law against [appellants] on their age discrimination claims." The court also found that it had correctly sustained appellees' motion for summary judgment regarding JoAnn's sexual harassment claim. Appellants appeal this decision and present the following three assignments of error.
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF GERRY GISMONDI'S CLAIM OF AGE DISCRIMINATION.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF JOANN GISMONDI'S CLAIM OF SEXUAL HARASSMENT.
 III. THE TRIAL COURT ERRED IN COMPELLING PLAINTIFFS' TESTIMONY REGARDING THE NATURE AND CAUSES OF THEIR MARITAL DISCORD DESPITE THEIR ASSERTION OF THE MARITAL PRIVILEGE.
Appellants argue in their first assignment of error that the trial court erred in granting appellees' motion for summary judgment regarding Gerry's claim of age discrimination. Appellants contend that when viewing the evidence in a light most favorable to appellants, the trial court should have found that genuine issues of material fact existed.
Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370. Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v.Applied Cos. (1993), 67 Ohio St.3d 344, 346. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp.
(1997), 122 Ohio App.3d 100, 103. A party seeking summary judgment on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine material fact on the essential claims of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
The area of age discrimination law was developed to prevent older workers from being deprived of employment due to "inaccurate and stigmatizing stereotypes" that "productivity and competence decline with old age." Hazen Paper Co. v.Biggins (1993), 507 U.S. 604, 610,113 S.Ct. 1701, 1706. The leading Ohio Supreme Court case on age discrimination is Mauzyv. Kelly Services, Inc. (1996), 75 Ohio St.3d 578. McLeod v. D.Phillips-Osborne School (Sep. 30, 1998), Lake App. No. 97-L-144, unreported, following Petrilla v. Ajax MagenthermicCorp. (1998), 82 Ohio St.3d 61.
In order to prevail in an employment discrimination case, the plaintiff must prove discriminatory intent. Mauzy at 583. Discriminatory intent may be proven either directly or indirectly. Ricker v. John Deere Ins. Co. (Sept. 29, 1998), Franklin App. No. 97APE11-1505, unreported (1998 Opinions 4589, 4592). A plaintiff may directly establish a prima facie case of age discrimination pursuant to R.C. 4112.14 by presenting evidence, of any nature such as direct, circumstantial, or statistical evidence of discrimination, to show that the discharge of an employee by an employer more likely than not was motivated by discriminatory intent. Mauzy at 578, paragraph one of the syllabus. A plaintiff may also indirectly establish a prima facie case of age discrimination pursuant to R.C.4112.14 by proving each of the four elements outlined inMcDonnell Douglas Corp. v. Green (1973), 411 U.S. 792,93 S.Ct. 1817. Mauzy at 582-584. We will address appellants' assignment of error by determining whether appellants either directly or indirectly presented sufficient evidence proving age discrimination.
Appellants contend that the trial court erred in not considering evidence that directly proved that appellees discriminated against appellant because of age. The specific instances which appellants claim demonstrate direct evidence of age discrimination are stated in appellants' brief as follows:
 * * * Nine months before [Gerry's] termination, his supervisor, Nick Buscaglia, said that Gerry's "time had passed" but that "in his time he was a great salesman." He also said that Gerry's "methods were outdated." * * * Christine Harle, the Manager of the Processing Department at the time Gerry was terminated, attended a meeting of all employees the day after Gerry was fired at which Buscaglia stated that MT had "decided to replace [Gerry] with new and younger management."
Plaintiffs initially have the burden to prove that alleged age-biased comments "establish a causal link or nexus between the alleged discriminatory statements and his termination."Ricker at 4594. Under the direct method, "comments which are isolated, ambiguous or abstract * * * cannot support a finding of age discrimination." Byrnes v. LCI Communication HoldingsCo. (1996), 77 Ohio St.3d 125, 130. Additionally, the amount of time between when the comments were made and when t he employee is terminated, may be considered by the trial court when determining whether the evidence sufficiently establishes a causal link. Id. at 128, 130. However, the amount of time between when alleged discriminatory comments are made and when the employee is terminated generally should not be an exclusive factor when determining whether a causal link or nexus exists.
In the present case, after having reviewed the alleged age biased comments made by Buscaglia and construing them in favor of appellants, we find that the comments do not establish sufficient evidence directly supporting a finding of age discrimination. Buscaglia's comments that Gerry's "time had passed," "in his time he was a great salesman," and his "methods were outdated" were made nine months prior to Gerry's termination. Appellants fail to demonstrate how Buscaglia's comments were "tied in time or fact" to Gerry's termination. See Byrnes at 130. Buscaglia's statement that Gerry was replaced by "new and younger management" is more of a statement of what action had occurred, as opposed to a statement concerning an intent to discriminate against Gerry because of age. We emphasize that the determination of whether the evidence sufficiently supports a finding of age discrimination is not dependent upon any one factor (e.g., the length of time between when the comment was made and when the employee was terminated), and each case should be evaluated according to the facts of that case. Further, our determination that appellant presented insufficient evidence to directly prove age discrimination does not also determine whether such evidence is inadmissible to indirectly prove age discrimination.
Appellants also attempt to directly establish age discrimination by presenting evidence that MT discriminated against other employees. For example, JoAnn stated in her affidavit:
 "MT frequently suggested that the Columbus office hire young men as loan officers and bring in young blood. I was told by Mr. Buscaglia to hire younger salesmen. At one point, Mr. Buscaglia told me to let a particular individual go and hire a young, new, aggressive guy. * * * Mr. Buscaglia told me that the individual that he wanted to let go was old and tired."
"Although a plaintiff may rely on evidence of any nature to establish discriminatory intent under the direct method, some causal link or nexus must exist between the employer's alleged discriminatory conduct and the plaintiff to give rise to a permissible inference that the employer acted with discriminatory animus toward the plaintiff." Ricker at 4597. "The mere fact that an employer may have discriminated against other employees, standing alone, is insufficient." Byrnes at 130. A review of appellants' brief shows that they fail to argue that a causal link exists between the alleged discriminatory remarks and that appellee acted with discriminatory animus toward Gerry. Accordingly, we agree with the trial court and find that appellants have presented insufficient evidence to directly prove age discrimination.
Appellants have also presented evidence attempting to indirectly prove age discrimination. Absent evidence directly proving age discrimination, a plaintiff may indirectly establish a prima facie case of age discrimination in an employment discharge action pursuant to R.C. 4112.14, by demonstrating that: (1) he was a member of the statutorily-protected class, (2) he was discharged, (3) he was qualified for the position, and (4) he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Mauzy at 582-583, followingMcDonnell Douglas Corp.
If a plaintiff successfully establishes the four-part test, "a presumption of age discrimination is created."Ricker at 4593. The function of the four element McDonnellDouglas test "is to allow the plaintiff to raise an inference of discriminatory intent indirectly. It serves to eliminate the most common nondiscriminatory reasons for the employer's action: lack of qualifications or the absence of a vacancy."Mauzy at 583. The McDonnell Douglas test allows a plaintiff to indirectly prove discriminatory intent because "it is very difficult to prove what the state of a man's mind at a particular time is." United States Postal Serv. Br. OfGovernors v. Aikens (1983), 460 U.S. 711, 716-717,103 S.Ct. 1478, 1482. An employer is presumed to have discriminated against a plaintiff who has proven each of the elements of theMcDonnell Douglas test because:
 * * * [W]e know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant [or terminating an employee] have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration * * *. [Emphasis sic.] [Furnco Constr. Corp. v. Waters
(1978), 438 U.S. 567, 577, 98 S.Ct. 2943, 2950.]
In the present case, the trial court found that based upon the evidence being construed in appellants' favor, that they proved each of the four elements: (1) Gerry was a member of a statutory protected class; (2) Gerry was discharged from his position; (3) Gerry was qualified for the position; and (4) Gerry was replaced by a person who was younger and outside of the protected class. After having independently reviewed the record, we find that the record supports the trial court's conclusion that appellants indirectly established a prima facie case of age discrimination.
"Once a plaintiff establishes a prima facie case of * * * age * * * discrimination, the burden shifts to the employer to provide some legitimate, nondiscriminatory reason for the action taken. * * * If the employer establishes a nondiscriminatory reason, the plaintiff then bears the burden of showing that the employer's proffered reason was a 'pretext for impermissible discrimination.'" Owens v. Boulevard MotelCorp. (Nov. 5, 1998), Franklin App. No. 97APE12-1728, unreported (1998 Opinions 5027, 5034) quoting Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,198 (citations omitted).
In the present case, appellees argue that Gerry's termination was based upon legitimate nondiscriminatory reasons. Appellees presented evidence showing that the decision was based upon Gerry's performance and because of arguments between Gerry and JoAnn in the office.
In their memorandum opposing appellees' motion for summary judgment, appellants attempted to rebut appellees' argument by challenging the facts surrounding appellees' proffered reasons for terminating Gerry. For example, a memo from Fred Pawlikowski, dated April 6, 1994, stated that Gerry was terminated "for his inability to consistently meet his business sales objectives." Gerry disputes this conclusion by stating in an affidavit that he "performed $160,000,000 worth of business in 1993 and my goal was $100,000,000." JoAnn stated in her deposition that appellees' opinion that Gerry's "numbers weren't where they wanted them to be * * * was phenomenal to me, because the numbers were remarkable."
Appellees also claim that Gerry's termination was based upon complaints from employees that Gerry and JoAnn often argued about their deteriorating marital relationship at the office. Buscaglia stated in his affidavit:
 * * * Despite the volume of mortgage business our Columbus, Ohio office was doing, it became evident that the Gismondi team concept was not working out as MT had hoped. Specifically, I learned sometime in early to mid-1993 that employees in the Columbus office were complaining about Joann Gismondi being abusive toward them and being extremely volatile and unpredictable in her management direction, and about problems with interactions between Joann and Gerry. Specifically, at this time, I received phone calls from members of Joann Gismondi's production staff indicating that Gerry and Joann Gismondi were fighting at the office, and that Joann Gismondi was using coarse and vulgar language at the office, slamming doors during the course of her fights with Gerry Gismondi and acting in an argumentative fashion with other employees in the office. * * *
Gerry claims that he and Joann did not fight in the office. Gerry stated in his affidavit that the "deterioration of my relationship with JoAnn Gismondi did not cause any clashes in the office." When asked in her deposition how the decline in appellants' marital relationship "play[ed] itself out in the office," JoAnn replied "I really don't think it did." Appellants also presented an affidavit of Christine Harle which states in part:
 While I worked at MT, I never heard JoAnn Gismondi use inappropriate language or yell at other employees. I never witnessed JoAnn Gismondi have a volatile temper. I got along, personally and professionally, with both JoAnn and Gerry Gismondi. * * * During the time that Gerry and JoAnn Gismondi ran the Columbus office, it was my observation that the office's performance was excellent and that we were either meeting or exceeding our goals.
Gerry's daughter Geannine Gismondi, who worked as a receptionist at the Columbus office, stated in an affidavit that she did not see appellants have arguments at work.
After having reviewed the evidence in a light most favorable to appellants, we find that there is a genuine issue of material fact concerning appellees' alleged legitimate nondiscriminatory reasons for terminating Gerry. Through challenging the facts forming the basis of appellees' alleged legitimate nondiscriminatory reasons, appellants have created a question of fact concerning whether appellees' proffered reasons were a "pretext for impermissible discrimination."
A review of the trial court's opinion shows that the trial court also based its finding that summary judgment was proper because appellants did not dispute whether appellees "received complaints and believed the contents of said complaints." While appellants did not dispute whether appellees received complaints from employees and that appellees may have believed the complaints, this does not provide a sound basis for granting appellees' motion for summary judgment.
Gerry stated in his deposition that he could not deny whether appellees received complaints from employees because he did not know whether appellees in fact received them. A review of the record shows that appellees did not disclose the names of the individuals who allegedly complained about appellants. For example, when JoAnn was terminated, she asked why she was being terminated and was told that it was based upon "these anonymous phone calls" and that "he did not have to share that [information] with me and had no intention of doing so." JoAnn stated in her affidavit that "[t]he only reason I was ever given for my termination was because of anonymous telephone calls."
Legitimate business reasons exist for the practice of keeping the identities of complaining employees confidential. However, this confidentiality should not be allowed to foreclose an employee from challenging an employer's assertion that the employee's termination was based upon complaints from other employees. To allow summary judgment based upon these facts would in effect allow an employer to terminate an employee for any reason, assert that the termination occurred based upon confidential complaints from other employees, and thus prevent an employee from effectively challenging the employer's reasons for the termination. Accordingly, we disagree with the trial court's conclusion that summary judgment was proper because appellants did not dispute whether appellees "received complaints and believed the contents of said complaints."
The trial court also held that summary judgment was appropriate because "it is nearly impossible to believe that the same person who hired Gerry when he was forty-nine (49) years old would fire him merely two (2) years later when he was fifty-one (51) years old." Appellees correctly point out that case law generally supports the trial court's reasoning. A lack of discrimination may be inferred from the fact that the same individual both hired and fired the employee. Pulver v.Rockwood Highland Tower Investments (Mar. 26, 1997), Hamilton App. Nos. C-950361, C-950492, unreported, appeal dismissed (1997), 79 Ohio St.3d 1482, followed Buhrmaster v. OverniteTransportation Co. (C.A.6, 1995), 61 F.3d 461, certiorari denied (1996), ___ U.S. ___, 116 S.Ct. 785; Lowe v. J.B. HuntTransport, Inc. (C.A.8, 1992), 963 F.2d 173; and Proud v. Stone
(C.A.4, 1991), 945 F.2d 796. However, a review of the facts in the present case demonstrates that a reasonable person could believe that Gerry was discriminatorily terminated even though he was hired and fired by MT within two years.
The hiring of appellants gave MT an opportunity to establish their business in a market in which it had little experience. James Beardi, the president of MT Mortgage and senior vice president of MT Bank during the time appellants worked for appellees, stated in his affidavit the following:
 3. * * * In 1991 we began planning to expand our mortgage operation outside of New York, and decided that we should start in our neighboring Midwestern states of Pennsylvania and Ohio, and specifically in the cities of Pittsburgh and Columbus because we believed that they were similar in many respects to Buffalo. We decided to open a office in Columbus, Ohio and we contemplated that this office would originate, process and close loans, and would have only one manager.
 4. When we decided to expand in Ohio it was suggested to us by a third-party that we contact Joann, who was managing a similar office for Empbanque Mortgage in Ohio. * * *
Empbanque Mortgage was having financial difficulties at that time and JoAnn stated that the parties were aware that Empbanque's financial condition was "shaky."
Appellants' hiring also helped provide MT with experienced employees familiar with the Columbus area. JoAnn felt that a bond existed between her and her employees at Empbanque and stated that she considered them as "family" or her "children." JoAnn also stated that "MT encouraged me to lure away from Empbanque the productive and successful employees who had been working with me. This enabled MT to open a new mortgage lending operation in Ohio with employees who had experience in the local market as well as experience working together." Gerry stated in his affidavit:
 "Many of the employees who worked for JoAnn and myself at Empbanque came with us when we began working with MT. It was important to Nick Buscaglia and Jim Beardi that employees follow JoAnn and myself to MT. We were confident that many or all would come with us because we had a good relationship with the staff.
JoAnn also stated that her understanding during the early discussions with MT concerning Gerry's role was that "Gerry's function was also going to encompass opening other offices in the state of Ohio." A performance evaluation of JoAnn dated November 12, 1992, states in part:
 * * * She has played a critical role in both the start-up, as well as, the ongoing development of our Columbus, Ohio mortgage operation.
 JoAnn developed, implemented and managed the procedures being followed by our Ohio staff. The respect and dedication shown her by her subordinates was vital in enticing her entire production team to join MT.
Additionally, when Empbanque withdrew from the Columbus market, MT acquired all of the servicing rights to Empbanque's conventional loans in Columbus.
When considering appellants' role in helping to establish MT in the Columbus market, a reasonable person could conclude that once MT was established, the necessity of appellants being retained by MT diminished allowing MT to hire "new and younger management." Therefore, even though generally a lack of discrimination may be inferred if the same individual both hired and fired an employee, we find that based upon the circumstances of the present case, a lack of discrimination should not be inferred.
Accordingly, after having reviewed the evidence in a light most favorable to appellants, we find that the trial court erred in granting appellees' motion for summary judgment concerning Gerry's age discrimination claim. Appellant presented sufficient evidence to satisfy the four steps of theMcDonnell Douglas indirect discrimination test. While appellees met their burden in presenting evidence showing a legitimate nondiscriminatory reason for terminating Gerry, appellants presented sufficient evidence to create a genuine issue of material fact concerning the facts providing the basis for appellees' alleged legitimate nondiscriminatory reason. Appellants' first assignment of error is sustained.
Appellants argue in their second assignment of error that the trial court erred in dismissing JoAnn's claim of sexual harassment.[1] Appellants claim that the evidence shows that Buscaglia terminated JoAnn "because she would not cooperate with his sexual harassment." The trial court found that summary judgment was appropriate because appellants have "failed to create a genuine issue of material fact that the harassment had the purpose or effect of unreasonably interfering with her work performance or creating an intimidating, hostile, or offensive work environment." We agree.
When interpreting R.C. Chapter 4112, it is appropriate to look to analogous federal statutes. Strader v. Johnson (Dec. 22, 1998), Franklin App. No. 98AP-202, unreported (1998 Opinions 5899, 5903). "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq.,
Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Little Forest MedicalCtr. of Akron v. Ohio Civ. Rights Comm. (1991), 61 Ohio St.3d 607,609-610. The United States Supreme Court has recently held that under Title VII, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." BurlingtonIndus., Inc. v. Ellerth (1998), 118 S.Ct 2257, 2270. Under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton
(1998), ___ U.S. ___, 118 S.Ct. 2275, 2283.
In order to determine whether the environment was sufficiently hostile or abusive, the court looks at all the circumstances including the '"frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."'Id., quoting Harris v. Forklift Systems, Inc. (1993),510 U.S. 17, 23, 114 S.Ct. 367, 371. The requirement that the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment is crucial in order "to ensure that courts and juries do not mistake ordinary socializing in the workplace * * * for discriminatory 'conditions of employment.'" Oncale v. Sundowner Offshore Serv.Inc. (1998), ___ U.S. ___, 118 S.Ct. 998, 1003.
In the present case, JoAnn stated in her deposition that when she was terminated, Buscaglia told her "I didn't want this. I tried to keep you, This wasn't my idea, I love you, and put his arms around me and held me." She also stated that she did not consider his actions unwelcome at that time. She also stated that "[h]e was always very complimentary of me personally and of my business acumen and generally of my — my handling of situations. He was always very complimentary, joking, and very affectionate towards me." She stated that his "[p]hysical closeness, standing very close to me at a copy machine, or coming up behind me and pressing up against me at the copier" was "unwelcome." She contended that this occurred three or more times over a period of two years. She also stated that it "was not uncommon for Nick to put his arms around me, to stand and — and chat, you know, with his arms around me or rubbing my back as he was talking."
JoAnn stated that she usually would "just get myself out of * * * the way, out of the situation" and that she did not say anything to him about how she did not appreciate him being that close to her. She also claimed that he made unwelcome comments to her:
 * * * [H]e would sometimes make reference to our being together some day in — along a sexual vein, along those lines.
 * * * [W]hen he became aware that Gerry and I were separated and — and I was dating, he would ask me questions about, you know, dating and, you know, are you having a good time, and I bet you're a wild one, and, you know, one of these days, you know, we're — we're going to get together one of these days, that type of conversation.
When asked in her deposition whether "these statements or huggings, did they affect you in any way," Joanne responded "Affect me? No."
When viewing the above evidence in a light most favorable to appellants, we find that no reasonable person could find that Buscaglia's actions were "hostile and abusive." The relatively infrequent alleged discriminatory conduct occurred over a two year period. Appellants do not allege that Buscaglia was "physically threatening or humiliating" towards JoAnn. Appellants do not characterize Buscaglia's comments as being beyond merely offensive utterances. Additionally, JoAnn does not allege that Buscaglia's statements and/or actions unreasonably interfered with her work performance. See, also,Black v. Zaring Homes, Inc. (C.A.6, 1997), 104 F.3d 822,823-826, certiorari denied (1997), ___ U.S. ___, 118 S.Ct. 172. Further, JoAnn does not present any evidence that Buscaglia threatened JoAnn to either submit to sexual demands or else suffer "adverse, tangible job consequences." Burlington Indus.,Inc. at 2262, 2263.
Appellants also claim that Buscaglia's actions towards Gerry's daughter, Geannine Gismondi, added "to the intimidating, hostile and offensive work environment." Appellants claim that Buscaglia also sexually harassed Geannine Gismondi. Appellants claim that since Geannine Gismondi "informed JoAnn of these incidents as they occurred * * * [t]his clearly added to the offensiveness of the work environment." However, we decline to expand sexual harassment claims to include persons who were affected only through knowing that allegedly another person was being sexually harassed. As we previously stated in regards to Gerry's age discrimination claim: "The mere fact that an employer may have discriminated against other employees, standing alone, is insufficient." Byrnes at 130. Accordingly, we find that the trial court did not err in granting appellees' motion for summary judgment as to JoAnn's sexual harassment claim. Appellants' second assignment of error is overruled.
Appellants argue in their third assignment of error that the trial court erred in ordering them to testify concerning the nature of the breakup of their marriage. Appellees contend that this information was necessary and relevant in order to help prove that appellees received complaints from employees that appellants were arguing about their marriage in the office.
Appellants properly presented this issue to this court because the court disposed of all claims between the parties through its grant of appellees' motions for summary judgment. "[A]ll interlocutory orders and decrees are merged into the final judgment, and as such, an appeal from the final judgment brings up all interlocutory rulings so merged with it."Bard v. Society National Bank (Sep. 10, 1998), Franklin App. No. 97APE11-1497, unreported (1998 Opinions 4085, 4089), following Horner v. Toledo Hosp. (1993), 94 Ohio App.3d 282,289.
However, we decline to address appellants' third assignment of error because by overruling the trial court's granting of summary judgment in favor of appellees, we also return jurisdiction of the case to the trial court. Upon remand, the trial court may rule upon the issue of whether appellants must testify concerning the nature of the breakup of their marriage because "the court retains jurisdiction to reconsider an interlocutory order any time before the entry of final judgment in the case, either sua sponte or upon motion." D'Agastino v.Uniroyal-Goodrich Tire Co. (Aug., 1998), (Lucas App. No. L-97-1400, unreported, following Pitts v. Ohio Dept. of Transp.
(1981), 67 Ohio St.2d 378, 379-380. Accordingly, we overrule appellants' third assignment of error.
For the foregoing reasons, appellants' first assignment of error is sustained, and appellants' second and third assignments of error are overruled. It is the order of this court that the order of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court for further proceedings pursuant to this opinion.
Affirmed in part; reversed in part; cause remanded.
DESHLER, J., concurs.
BOWMAN, J., concurs in part and dissents in part.
[1] Appellants' complaint stated a claim that JoAnn was terminated "on account of her * * * sex." We note that this is a claim of sex discrimination. A review of appellants' briefs and the trial court's proceedings show that appellants mostly argued that JoAnn was sexually harassed.